UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

RALPH SMITH                                              PLAINTIFF

VS.                                  CIVIL ACTION NO. 3:07CV40TLS-JCS

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS, G.V. SONNY
MONTGOMERY VA MEDICAL CENTER,
AND JOHN DOES 1-25                                       DEFENDANT

## MEMORANDUM OPINION AND ORDER

In this action brought by plaintiff Ralph Smith under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346 et seq., defendants United States Department of Veterans Affairs and G.V. Sonny Montgomery VA Medical Center moved to dismiss, or in the alternative, for summary judgment, asserting, among other things, that they were not proper defendants in this action and were entitled to be dismissed. This court entered its memorandum opinion and order on January 13, 2009 concluding that the only proper defendant in an action brought under the FTCA is the United States and that therefore, the United States Department of Veterans Affairs and G.V. Sonny Montgomery VA Medical Center defendants--the only defendants named herein--were not proper defendants and were therefore due to be dismissed. The United States has since requested to be substituted as defendant in place of the dismissed defendants, and as the defendant, it continues to press the pending motion to dismiss or, alternatively, for summary judgment on the merits of plaintiff's complaint. Plaintiff Smith has responded in opposition to the motion to dismiss or, alternatively, for summary judgment, and the court, having now

considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion should be granted.

According to the complaint in this cause, plaintiff Ralph Smith, a veteran of the Vietnam War, was diagnosed with Post Traumatic Stress Disorder (PTSD) in 1995 at the VA Hospital in New Orleans, Louisiana, where he sought and received treatment for his PTSD. In January 2004, because of its proximity to his home, plaintiff transferred his treatment to the G.V. Sonny Montgomery VA Medical Center in Jackson, where he participated in a residential treatment program, under the direction of his psychiatrist, Dr. Liberto. Plaintiff's psychiatric treatment at the Jackson VA included medications, therapy sessions and classes, one of which was a therapy writing class conducted by Ann Tandy, a nurse manager at the facility. Plaintiff alleges that while he was still in the residential treatment program, Ann Tandy began an intimate and sexual relationship with him which lasted for a number of months. After the affair ended in December 2004, plaintiff reported the affair to a social worker at the hospital, which prompted an investigation. Plaintiff alleges that this relationship with Tandy caused him to suffer a setback in his medical treatment and resulted in his being hospitalized for increased depression and anxiety.

In June 2006, plaintiff filed an administrative claim under the Federal Tort Claims Act, and on January 23, 2007, after six

months passed with no decision on his claim, plaintiff filed the present action against the United States Department of Veterans Affairs and the G.V. Sonny Montgomery VA Medical Center (VA Medical Center) seeking to recover damages for medical negligence, medical malpractice, intentional infliction of emotional distress, negligent infliction of emotional distress, assault and battery, negligent supervision, negligent training, negligent hiring and gross negligence. All of plaintiff's claims are brought under the Federal Tort Claims Act.

Except when waived, the United States has sovereign immunity from suit. United States v. Sherwood, 312 U.S. 584, 586, 61 S. Ct. 767, 85 L. Ed. 1058 (1941). This immunity deprives federal courts of subject matter jurisdiction. Chapa v. United States Dept. of Justice, 339 F.3d 388, 389 (5th Cir. 2003). The FTCA waives that immunity for injury

> caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). "By its terms, this waiver of sovereign immunity only applies when the tortfeasor acts within the scope of his employment." Bodin v. Vagshenian, 462 F.3d 481, 484 (5th Cir. 2006). Plaintiff has alleged in his complaint that the Government is vicariously liable for Tandy's actions in engaging in an affair with him. The Government has moved for summary judgment,

3

contending that Tandy acted outside the course and scope of her employment so that the FTCA's waiver of immunity is inapplicable.

"The issue of whether an employee is acting within the scope of his employment for purposes of the FTCA is governed by the law of the state in which the wrongful act occurred." Bodin, 462 F.3d at 484 (citations omitted). Under Mississippi law, "[t]o be 'within the scope of employment,' the act must have been committed in the course of and as a means to accomplishing the purposes of the employment and therefore in furtherance of the master's business." Adams v. Cinemark USA, Inc., 831 So. 2d 1156, 1159 (Miss. 2002) (internal citations omitted). "Also included in the definition of 'course and scope of employment' are tortious acts incidental to the authorized conduct. Stated another way, a master will not be held liable if the employee 'had abandoned his employment and was about some purpose of his own not incidental to the employment.'" Id. (citations omitted). "That an employee's acts are unauthorized does not necessarily place them outside the scope of employment if they are of the same general nature as the conduct authorized or incidental to the conduct." Id. Elaborating on the applicable principles, the court in Cockrell v. Pearl River Valley Water Supply District, wrote the following:

> "Mississippi law provides that an activity must be in furtherance of the employer's business to be within the scope and course of employment." To be within the course and scope of employment, an activity must carry out the employer's business. Therefore, if an employee steps outside his employer's business for some reason which is not related to his employment, the relationship between the employee and the employer "is temporarily

4

> suspended and this is so 'no matter how short the time and the [employer] is not liable for the [employee's acts] during such time.'" "An employee's personal unsanctioned recreational endeavors are beyond the course and scope of his employment."

865 So. 2d 357, 362 (Miss. 2004) (citations omitted). See also The Commercial Bank v. Hearn, 923 So. 2d 202, 203 (Miss. 2006) ("Conduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master....") (quoting § 228 Restatement (Second) of Agency (1958)); Tanks v. Lockheed Martin Corp., 417 F.3d 456, 464 (5th Cir. 2005) ("The Mississippi Supreme Court defines actions taken in the 'course and scope' of employment with respect to respondeat superior tort liability as acts 'committed in the course of and as a means to accomplishing the purposes of the employment and therefore in furtherance of the master's business ... [or] tortious acts incidental to the authorized conduct'") (quoting Adams, 831 So. 2d at 1159). The burden is on the plaintiff asserting vicarious liability to show that the employee was acting within the course and scope of his employment at the time he committed the acts at issue. See Foradori ex rel. Foradori v. Captain D's, LLC, No. 1:03 CV 669, 2005 WL 3307102 (N.D. Miss. Dec. 6, 2005), aff'd, 523 F.3d 477 (5th Cir. 2008). Thus, to avoid summary judgment, Smith must provide evidence to create a fact question on whether Tandy's conduct in engaging in

5

an intimate and sexual relationship with him was the kind of work that she was employed by the VA Hospital to perform and whether such conduct was done in part to serve the VA Hospital.

The Government, of course, submits that Tandy's engaging in an affair with a patient, Smith, was not in furtherance of the business of the VA Hospital, which certainly did not hire her to engage in extramarital affairs with patients. Plaintiff, on the other hand, argues that the facts presented would reasonably support a finding that Tandy was acting in the course and scope of her employment. Smith notes that Tandy's position had her dealing with patients who were trying to recover from unimaginable trauma related to their military service and involved her encouraging these patients to write about these feelings and experiences and to discuss them. He reasons that as such, Tandy, in the course and scope of her employment, was required to attempt to gain the trust of her patients and to get them to discuss serious personal issues and experiences. Plaintiff reasons that as a direct consequence of and incidental to these duties of her employment, Tandy would meet with him behind closed doors at the VA Medical Center, which is where she began her relationship with him. He concludes that since Tandy initiated her sexual relationship incidental to her duties of employment, the United States is liable for her actions.[1]

---

[1] The parties dispute whether Smith or Tandy initiated the relationship. For purposes of the present motion, the court will accept as true plaintiff's assertion that Tandy initiated the

6

Numerous courts have considered and rejected similar arguments for finding an employer vicariously liable for a therapist's or counselor's sexual relationship with his or her patient. In P.S. v. Psychiatric Coverage, Ltd., 887 S.W.2d 622 (Mo. Ct. App. 1994), for example, a psychologist, Dr. Bouzrara, after suggesting to his patient that her panic attacks could be caused by sexual frustration, began a sexual relationship with the patient that lasted over a period of several months, during which the two had numerous sexual encounters both during therapy sessions and away from the clinic. The patient and her husband later sued Dr. Bouzrara and his employer, alleging he was negligent by becoming sexually involved with his patient under the guise of therapy, and that his employer was vicariously liable for Dr. Bouzrara's negligence. In setting aside a jury verdict, the court held that Dr. Bouzrara's intentional sexual misconduct was not psychological therapy and went beyond his scope of employment as a therapist. The court noted that under applicable Missouri law, which is similar to Mississippi law,

> Whether an act was committed within the scope and course of employment is not measured by the time or motive of the conduct, but whether it was done by virtue of the employment and in furtherance of the business or interest of the employer. If the act is fairly and naturally incident to the employer's business, although mistakenly or ill advisedly done, and did not arise wholly from some external, independent or personal motive, it is done while engaged in the employer's business.

---

relationship.

Id. at 624-25.  The court concluded,

> Dr. Bouzrara was hired by employer to provide therapy to patients at employer's clinic.  Regardless of whether sexual misconduct takes place during or in connection with therapy, it is not the general kind of activity a therapist is employed to perform.  The sexual encounters between plaintiff P.S. and Dr. Bouzrara resulted from purely private and personal desires.  The acts did not occur as part of any therapy program and they were not intended to further employer's business.  Dr. Bouzrara was not acting within the scope of his employment when he engaged in sexual relations with plaintiff P.S.

Id.  Other courts have reached the same conclusion under the same or similar facts.  See, e.g., Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 567 (6th Cir. 2008) (holding that under Kentucky law, "a therapist's sexual affair with his patient is outside the scope of his employment as a matter of law"); Andrews v. U.S., 732 F.2d 366, 370 (4th Cir. 1984) (holding that therapist was not acting within the scope of government employment when he manipulated the physician-patient relationship to seduce patient, and noting the absence of evidence to suggest that the therapist "considered his sexual adventures to be a bona fide part of the therapy he was employed to provide"); L.L.N. v. Clauder, 203 Wis. 2d 570, 552 N.W.2d 879, 888 (Wis. Ct. App. 1996)(stating that "a therapist/ counselor who initiated sexual contact with a client in the course of her therapy, knowing that the clinic in which he was employed forbade such conduct, was acting outside the scope of his employment as a matter of law"); Koren v. Weihs, 190 A.D.2d 560, 593 N.Y.S.2d 222 (1st Dep't 1993) (psychotherapist who had sex with patient under the guise of treatment was not acting within

8

the scope of his employment); Bunce v. Parkside Lodge of Columbus, 73 Ohio App. 3d 253, 258, 596 N.E.2d 1106, 1109 (Ohio Ct. App. 1991) (counselor in drug rehabilitation center was not acting in course and scope of employment when he seduced patient, since it was clear "the concept that sexual contact occurring in an orthodox counseling program would be completely unrelated to the business of the employer"); Birkner v. Salt Lake County, 771 P.2d 1053, 1058 (Utah 1989) (employer was not vicariously liable for therapist's sexual encounters with patient, because while the "[therapist's] misconduct took place during, or in connection with, therapy sessions, it was not the general kind of activity a therapist is hired to perform.  More critical, it was not intended to further his employer's interest [but rather] served solely the private and personal interests of [the therapist]"); Cosgrove v. Lawrence, 215 N.J. Super. 561, 562–563, 522 A.2d 483, 484–485 (N.J. Super. App. Div. 1987) (as a matter of law, social worker therapist's sexual relations with client were not conduct of the kind he was employed to perform within the scope of his employment);² cf. Plummer v. Center Psychiatrists, Ltd., 252 Va.

---

² In Bodin v. Vagshenian, 462 F.3d 481, 484 (5th Cir. 2006, the Fifth Circuit noted that in Benavidez v. United States, 177 F.3d 927 (10th Cir. 1999), the court had held that the FTCA's assault and battery exception, infra, did not bar a plaintiff's claim that his government-employed psychologist used therapy sessions to convince him that he was a homosexual and that he should have sex with the psychologist.  The court in Bodin further noted that the Benavidez court had not decided whether the psychologist was acting in the course and scope of his employment, but rather that court had merely assumed without deciding that the psychologist had acted within the course and scope of his

9

233, 235-236, 476 S.E.2d 172, 174 (Va. 1996) (where state law placed burden on employer to prove employee psychologist was not acting within scope of employment when he engaged in sexual relationship with patient, in absence of proof from employer, court could not conclude as a matter of law that employee was not acting within the scope of his employment).

In the case at bar, plaintiff does not contend, and more pertinently has presented no proof, that Tandy initiated and engaged in a relationship with him as part of the therapy she was employed to provide. Granted, her job duties evidently did entail gaining patients' trust so that they would feel free to open up and discuss personal issues and experiences; but there is no basis for any suggestion that Tandy "considered [her] sexual adventures to be a bona fide part of the therapy [she] was employed to provide." Andrews, supra, at 370. Moreover, regardless of whether Tandy engaged in alleged misconduct "behind closed doors" at the VA Medical Center, or, as was more often the case, at

---

employment as a government psychologist. Id. at 928 n.2.
    The Bodin court also recognized that in Simmons v. United States, 805 F.2d 1363 (9th Cir. 1986), the court, applying Washington law, had deferred to the trial court's finding that a psychiatrist's sexual involvement with his client was in the scope of his employment. The Bodin court observed, though, that a Washington state court had subsequently rejected Simmons on the basis it had misapplied Washington state law. Id. (citing Thompson v. Everett Clinic, 71 Wash. App. 548, 860 P.2d 1054, 1058 (1993), in which the court granted summary judgment on a patient's claim that the defendant medical clinic was vicariously liable for its employee doctor's sexual abuse of patient during medical exam).

10

motels and other rendezvous sites away from the hospital, her affair with plaintiff was not the general kind of activity she was hired to perform. The court concludes, therefore, that plaintiff has failed to demonstrate any supportable basis for holding the Government vicariously liable for Tandy's misconduct. Cf. Bodin, 462 F.3d at 486 (holding that under Texas law, psychiatrist's sexual assaults on patients were outside course and scope of employment, and noting that although the assaults occurred at the VA office during scheduled appointments while the psychiatrist was purportedly providing treatment, plaintiffs offered no evidence that the psychiatrist considered his sexual advances to be a legitimate form of treatment).

Plaintiff alleges alternatively that the Government is liable for Tandy's misconduct under the doctrine of ratification, which "imposes liability on an employer when that employer adopts, confirms, or fails to repudiate the unlawful acts of an employee of which the employer is aware." Sanders v. Casa View Baptist Church, 134 F.3d 331, 339 (5th Cir. 1998) (citing Prunty v. Arkansas Freightways, Inc., 16 F.3d 649, 652-53 (5th Cir. 1994)). According to plaintiff, the Government is liable since officials at the VA Hospital knew or should have known that prior to her relationship with him, Tandy had been involved in a sexual relationship with another patient, John Cunningham, and by failing to take action in response to that knowledge, the VA Medical Center adopted, confirmed, and/or failed to repudiate Tandy's

11

unlawful acts.  Implicit in plaintiff's argument is his recognition that, "before one can ratify an act so that it becomes his own, he must know of the act with which he is charged." Prunty, supra, at 654.  Yet plaintiff has admitted he has no proof that anyone in the supervisory chain at the VA Medical Center knew, or should have known, of Tandy's alleged affair with John Cunningham, or of his own affair with Tandy.[3]  The doctrine of ratification cannot be applied here.

In addition to his claim that the Government is vicariously liable for Tandy's actions, plaintiff alleges that the Government is liable for the VA Medical Center's negligence in failing to prevent Tandy's misconduct.  The Government contends that this claim is barred by the FTCA's assault and battery exception. Section 2680 of the FTCA, entitled "Exceptions," provides in relevant part:

> The provisions of this chapter and section 1346(b) of this title shall not apply to...
> (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights . . .

---

[3] Plaintiff argues in his response that Hugh Cochran, a Hospital employee, told him that after plaintiff had reported his affair with Tandy, hospital officials listened to her voice mail and discovered she was having sexually explicit conversations with other patients.  However, the fact that hospital officials discovered evidence of Tandy's misconduct after plaintiff had already reported his affair with her, does not support a conclusion that the VA Medical Center "ratified" Tandy's actions.

12

28 U.S.C. § 2680(h). Although the Fifth Circuit concluded in Bodin, supra, that a psychiatrist's sexual assault of his patients occurred outside the scope of his employment, the court concluded that the plaintiffs' claim that other hospital employees were negligent in failing to prevent the assault did not fall within the assault and battery exception.

The Bodin court recognized that the assault and battery exception does not merely bar claims for assault and battery but instead broadly excludes from the FTCA's waiver of immunity any claim "*arising out of* assault or battery," including claims "'that sound in negligence but stem from a battery committed by a Government employee.'" Id. at 488 (quoting United States v. Shearer, 473 U.S. 52, 55, 105 S. Ct. 3039, 87 L. Ed. 2d 38 (1985)). And, citing the plurality in Shearer, the court specifically acknowledged that the FTCA does not waive sovereign immunity for negligent supervision claims, which are grounded on a duty arising from the employment relationship. Id. The court in Bodin observed, however, that the Supreme Court inسheridan v. United States, 487 U.S. 392, 108 S. Ct. 2449, 101 L. Ed. 2d 352 (1988), had "clarified that the intentional tort exception does not bar all negligence claims that are related to an assault or battery committed by a government employee." Id. Sheridan, the court wrote, "'stands for the principle that negligence claims related to a Government employee's § 2680(h) intentional tort may proceed where the negligence arises out of an independent,

antecedent duty unrelated to the employment relationship between the tortfeasor and the United States.'" Id. at 488-89 (quoting Leleux v. United States, 178 F.3d 750, 757 (5th Cir. 1999)). "The actual assault 'thus serves only to establish the extent of the plaintiff's injury, not to establish the . . . breach of duty.'" Id. (quoting Thigpen v. United States, 800 F.2d 393, 399 n.10 (4th Cir. 1986) (Murnaghan, J., concurring in result)). "In other words, the plaintiffs can recover only if the United States breached a duty independent of its employment relationship with [the psychiatrist]."

Addressing the plaintiffs' contention in Bodin that the United States had "an antecedent duty to protect patients in VA hospitals from reasonably known dangers," the court wrote:

> Whether the United States owed an independent duty to the plaintiffs is a question of Texas state law. See 28 U.S.C. § 1346(b)(1) (rendering United States liable "in accordance with the law of the place where the act or omission occurred"). Under Texas law, a hospital has a duty to exercise care to safeguard patients from known and reasonably known dangers. This duty extends to taking reasonable steps to prevent assaults by third persons, see Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842 (Tex. 2005) (discussing malpractice claims based on assaults between patients), and medical staff, see Buck, 130 S.W.3d 285 (discussing claim of assault by neurologist). A provider of psychological services has a heightened duty of care to its patients because of their vulnerability and the resulting special relationship. See Porter v. Nemir, 900 S.W.2d 376 (Tex.App.-Austin 1995, no pet.). Similarly, a possessor of land owes a duty to invitees to protect them from foreseeable assaults on the premises. These theories of liability do not depend on the employment status of the assailant. The United States could be held liable whether the plaintiffs were sexually assaulted by its employee or a third-party tortfeasor.

14

Bodin, 462 F.3d at 489.

Like the plaintiffs in Bodin, plaintiff herein argues that under Mississippi law, the VA Medical Center had an antecedent duty to protect patients, such as him, from reasonably known dangers, including assault by third persons. See Mississippi Dept. of Mental Health v. Hall, 936 So. 2d 917 (Miss. 2006) (holding that "[a] hospital is under a duty to exercise reasonable care to safeguard the patient from any known or reasonably apprehensible danger from herself and to exercise such reasonable care for her safety as her mental and physical condition, if known, may require") (quoting Mounts v. St. David's Pavilion, 957 S.W.2d 661, 663 (Tex. Ct. App. 1997)). More specifically, he argues that the Government had a duty to protect him from the foreseeable assaults committed by Ann Tandy since they knew, or should have known, of her previous "relationships" with patients such as plaintiff. However, as plaintiff implicitly acknowledges, for a duty to arise, the risk of harm must be foreseeable. Plaintiff's only argument here that the risk of sexual assault by Ann Tandy was foreseeable is based on his assertion that VA supervisory officials knew or should have known of Ann Tandy's prior affair with another patient. Yet as the court has observed supra, plaintiff has failed to present any proof to support his allegation that VA officials knew or had reason to know of Tandy's alleged affair with John Cunningham. Thus, the Government is entitled to summary judgment on plaintiff's claim that VA

15

officials were negligent in failing to prevent her sexual predation.

Based on all of the foregoing, the court concludes that the United States' motion for summary judgment is well taken, and it is therefore ordered that the motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 13th day of February, 2009.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE